UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DINO N. THEODORE and ACCESS WITH SUCCESS, INC., | * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 15-cv-11774-ADB |
| LOWELL GENERAL HOSPITAL and CIRCLE HEALTH, INC., | * * * | |
| Defendants. | * | |

MEMORANDUM AND ORDER
ON MOTION FOR SUMMARY JUDGMENT

BURROUGHS, D.J.

Plaintiffs Dino Theodore and Access With Success, Inc. filed this lawsuit against Lowell

General Hospital and Circle Health, Inc., which operates the hospital, alleging that Defendants

violated Title III of the Americans with Disabilities Act and seeking an order requiring

Defendants to remove architectural barriers to wheelchair access at the hospital. Defendants

moved for summary judgment on May 26, 2016, and Plaintiffs filed an opposition on June 16,

2016. [ECF Nos. 24, 26]. For the reasons set forth below, the motion for summary judgment is

granted in part and denied in part.

I.      FACTUAL AND PROCEDURAL BACKGROUND

The following undisputed facts are drawn from the parties' statements of undisputed

facts, the complaint, and Defendants' answer. [ECF Nos. 1, 9, 25, 27].

The Lowell General Hospital campus consists of a hospital with 157 patient beds, a

building for doctors' offices, and parking. The hospital was sold to the current owners and

became known as Lowell General Hospital on or around July 1, 2012. Prior to 2012, the hospital

was known as Saints Memorial and was controlled by the Roman Catholic Church, which meant that it was exempt from the accessibility provisions of the Americans with Disabilities Act ("ADA"). Fewer than ten percent of the hospital's patient bedrooms are wheelchair accessible, and fewer than ten percent of the patient bedrooms have an accessible toilet and bathroom, as defined by Section 805 of the 2010 ADA Standards for Accessible Design. The hospital has indicated that the lack of accessible bedrooms and bathrooms is due to the fact that it was exempt from the ADA accessibility requirements prior to 2012. [ECF No. 27-3].

Plaintiff Dino Theodore is paralyzed and requires the use of a wheelchair for ambulation. On April 11, 2013, Theodore was admitted to the hospital through the emergency room for a fractured hip and femur. He was placed in a double room with a bathroom that was not accessible by wheelchair. Theodore alleges that he experienced certain difficulties due to the lack of an accessible bedroom and an accessible bathroom. [ECF No. 27 at 5–6]. Theodore also claims that it is difficult to navigate a wheelchair from the parking lot to the hospital and the doctors' offices on the campus, that the hospital's x-ray table and public restroom are difficult for him to use, and that the hospital staff has not been trained to handle accessibility issues. Id. at 6–8.

The complaint alleges four categories of ADA violations at the hospital:

1)      patient rooms without adequate turning areas and associated accessible toilet and bathing areas;

2)      inaccessible public restrooms;[1]

3)      insufficient accessible parking; and

---

[1] Plaintiffs originally brought additional claims concerning service counters and fixed seating in the hospital cafeteria, but Plaintiffs have since stated that they no longer intend to pursue these claims. [ECF No. 27 at 4].

4)      lack of "accessible" medical equipment, training, and policies pertaining to the provision of services and medical care to individuals with disabilities.

The ADA imposes certain obligations to ensure accessibility when "new construction" occurs, 42 U.S.C. § 12183(a)(1), but the parties agree that no "new construction" has occurred on the hospital campus since July 2012. The ADA imposes other obligations when a building is "altered." 42 U.S.C. § 12183(a)(2). The parties dispute whether the hospital has been "altered" since July 2012 such that the hospital would be required to make additional modifications.

In October and November 2015, the hospital made certain modifications to the parking lot, including adding handrails to walkways and fixing curb ramps near the emergency department entrance. These modifications cost approximately $50,000.

The following describes evidence submitted by the parties in support of, or in opposition to, the summary judgment motion, some of which may be disputed.

The hospital represents that it engaged an architect to "do a walk-through" of the hospital campus in order to identify readily achievable modifications that would make the hospital more accessible. In addition, the hospital states that it "committed" to examine its parking facilities.

Plaintiffs submitted an affidavit by Dino Theodore, which describes changes that have been made to the hospital parking lot to improve access for disabled individuals, including the installation of a wheelchair ramp and freshly painted accessible vehicle spaces. [ECF No. 27-1]. The affidavit also describes current features of the parking lot that could make it difficult for people who use wheelchairs to navigate the lot, including ruts, a depression, and an uneven curb ramp. In addition, the affidavit explains difficulties that Theodore encountered when attempting to use public restrooms at the hospital.

Theodore's affidavit also contains information about the Defendants' financial resources. It states that Circle Health had total net assets of $167,107,352 in 2014, that Lowell General Hospital had net assets of $160,100,000 as of the end of 2015, and that the hospital generated a profit of $3,800,000 in 2015.

Plaintiffs also submitted an affidavit by Sidney Harris, who was the ADA Coordinator for the City of Methuen from 2007–2014, and who currently works as a disability access consultant and advocate. [ECF No. 27-2]. The affidavit describes various problems with the hospital's parking lot, including signs for accessible spaces that are low and obscured, uneven curb ramps in poor condition, and a depressed sewer grate. The affidavit also describes issues with the hospital's restrooms, similar to the Theodore affidavit, and Harris additionally states that signs should be installed that indicate the location of the nearest accessible restroom. The Harris affidavit goes on to provide cost estimates for various ADA modifications, which are based on the Means ADA Compliance Pricing Guide (2d ed. 2004). The affidavit estimates the following costs: $1,817 to install two accessible parking spaces; $100–200 per sign to install new signs; $1,090 to install a curb cut in a concrete sidewalk; $4,740 to remodel a multi-use toilet room; $9,358 to build a single-user accessible toilet room; $974 to lower a urinal; $44 to wrap a drainpipe; $345 to lower a soap dispenser or paper towel dispenser; $300 to install a tilted mirror over a sink; $325 to replace a faucet, controls, and a drain; $294 to replace door hardware with lever-handled hardware; and $146 to anchor plastic exterior signage to a masonry wall.

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment shall be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "This standard

is favorable to the nonmoving party, but it does not give him a free pass to trial." Nieves-Romero v. United States, 715 F.3d 375, 378 (1st Cir. 2013) (quoting Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011)). The nonmoving party "may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006).

###### B.      ADA Framework

Title III of the ADA prohibits discrimination on the basis of disability in places of public accommodation. 42 U.S.C. § 12182(a); see also Gathright-Dietrich v. Atlanta Landmarks, Inc., 452 F.3d 1269, 1272 (11th Cir. 2006). Facilities built after 1993, when the ADA was passed, must meet certain requirements for accessibility, but the ADA imposes a different set of requirements for facilities built before the ADA was enacted. Gathright-Dietrich, 452 F.3d at 1272–73. The pre-1993 facilities are required to "remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv).

The ADA defines "readily achievable" to mean "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). The following factors are used to evaluate whether removal of a particular barrier is "readily achievable":

> (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of a covered entity; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity; and (10) geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity

Gathright-Dietrich, 452 F.3d at 1273.

The court in <u>Colorado Cross Disability Coal. v. Hermanson Fam. Ltd. P'ship I</u>, 264 F.3d 999, 1007 (10th Cir. 2001) established a burden-shifting framework that has since been widely adopted by other courts.[2] Under this approach, the plaintiff bears the "initial burden of production to show (1) that an architectural barrier exists; and (2) that the proposed method of architectural barrier removal is 'readily achievable,' i.e., 'easily accomplishable and able to be carried out without much difficulty or expense' under the particular circumstances of the case." <u>Gathright-Dietrich</u>, 452 F.3d at 1273 (quoting <u>Colorado Cross</u>, 264 F.3d at 1007). "If the plaintiff meets this burden, the defendant then bears the ultimate burden of persuasion that barrier removal is not "'readily achievable.'" <u>Id.</u>

## C.      Whether Barrier Removal Is "Readily Achievable"

Defendants argue that Plaintiffs have not met their burden to prove that their proposed barrier removal projects are "readily achievable." The "readily achievable" standard is "a fact-intensive inquiry that will infrequently be decided on summary judgment." <u>Access Now, Inc. v. S. Fla. Stadium Corp.</u>, 161 F. Supp. 2d 1357, 1371 (S.D. Fla. 2001). The barrier removal projects that Plaintiffs have proposed can be grouped into four categories: the parking lot; restrooms; bedrooms; and equipment and training.

Plaintiffs have identified several barrier removal projects that they propose for the hospital parking lot and that appear to be readily achievable. Plaintiffs suggest installing new, taller signs for ten parking spaces that identify the spaces as accessible; renovating or replacing

---

[2] It does not appear that the First Circuit has had the opportunity to address this particular issue. District courts within the circuit have utilized the <u>Colorado Cross</u> framework, <u>see</u> <u>Marradi v. Galway House, Inc.</u>, No. CIV.A. 13-10813-RGS, 2014 WL 1454266, at *4 (D. Mass. Apr. 15, 2014); <u>Massachusetts v. E*Trade Access, Inc.</u>, 464 F. Supp. 2d 52, 60–61 (D. Mass. 2006), and it has also been applied by many other district courts across the country, <u>see, e.g.,</u> <u>MacClymonds v. IMI Inv., Inc.</u>, No. CIV.A. H-05-2595, 2007 WL 1306803, at *5 (S.D. Tex. Apr. 5, 2007); <u>White v. Cinemark USA, Inc.</u>, No. 204CV397GEBCMK, 2005 WL 1865495, at *6 (E.D. Cal. Aug. 3, 2005); <u>Speciner v. NationsBank, N.A.</u>, 215 F. Supp. 2d 622, 632 (D. Md. 2002).

approximately four curb ramps; and adding more asphalt in the area around a grate located in a crosswalk and replacing the grate. According to the cost estimates from the Harris affidavit, the signage project would cost approximately $1,000–2,000, while four new curb cuts would cost a total of $4,360. Plaintiffs did not provide a cost estimate for the grate project, though it may be similar to the curb cut estimate. All of these proposed projects appear to be reasonable in time, effort, scope, and price. See 28 C.F.R. § 36.304 (listing examples of steps to remove barriers, including installing ramps, making curb cuts, and "[c]reating designated accessible parking spaces"). Therefore, Plaintiffs have met their burden to proffer evidence indicating that the proposed parking lot barrier removal projects are readily achievable, so the motion for summary judgment on this issue is denied.

In regard to restroom facilities (public restrooms and those connected to patient rooms), Plaintiffs have described a variety of barrier removal projects that appear to be readily achievable. Lowering a urinal, wrapping a drainpipe to prevent burns, lowering a soap dispenser or paper towel dispenser, installing a tilted mirror over a sink, replacing a faucet, controls, and a drain, and replacing door hardware all appear to be minor projects that should require minimal time, effort, and disruption. See 28 C.F.R. § 36.304 (examples of steps to remove barriers, including insulating pipes under sinks, repositioning paper towel dispensers, and installing accessible door hardware). Plaintiffs have provided precise cost estimates for all these restroom projects, and no individual project costs more than $1,000. In addition, Plaintiffs provided cost estimates for constructing or remodeling an entire bathroom, which appear to be fairly reasonable ($4,740 to remodel a multi-use toilet room, and $9,358 to build a single-user accessible toilet room), but may involve additional architectural work or larger disruptions that would make the cost and effort great enough that the projects would not be mandatory under the

"readily achievable" standard. Regardless, Plaintiffs have produced enough evidence concerning these projects to proceed to trial, and accordingly, summary judgment on this issue is denied.

Plaintiffs contend that the patient bedrooms are difficult to navigate for individuals in wheelchairs, but they state that they are unable to provide estimates for what it would cost to accomplish barrier removal in these bedrooms. Plaintiffs couch this assertion in terms of making the rooms fully accessible, but without a cost estimate or a more concrete description of the work, it is unclear whether remodeling the bedrooms to make them accessible would constitute "readily achievable" barrier removal, or if such changes would only be required in the event of an "alteration" to the hospital. On the other hand, there may be barrier removal projects that could be accomplished with little to no cost, such as rearranging or removing some furniture. See 28 C.F.R. § 36.304 (listing rearranging furniture and repositioning shelves and telephones as examples of steps to remove barriers). Accordingly, the Court will not grant summary judgment for Defendants on this issue, but to prevail at trial, Plaintiffs will be required to identify specific barriers that they seek to have removed and to provide as much information as possible concerning the potential costs and disruption that the hospital might incur. See Massachusetts v. E*Trade Access, Inc., 464 F. Supp. 2d 52, 61 (D. Mass. 2006) ("Practically speaking, there may often be an information imbalance between a plaintiff and a defendant, with the defendant possessing the additional experience and knowledge gained from owning and operating the facility," however, "a plaintiff should at a minimum provide a general removal plan and discuss its feasibility, bearing in mind both structural concerns and estimated costs.").

Lastly, Plaintiffs claim that the hospital failed to survey its equipment and purchase new accessible equipment, and also that the hospital has not adopted a nondiscrimination policy or trained its staff about ADA requirements. The hospital asserts that it has no obligation to

purchase specific medical equipment, nor is it required to adopt a particular policy or training program. Plaintiffs have not explained how the hospital would be legally obligated to purchase certain equipment or adopt specific policies, and it is not clear to the Court how the provisions of the ADA that Plaintiffs have cited would impose such a requirement. See 42 U.S.C. § 12182 ("failure to remove *architectural barriers* . . . where such removal is readily achievable" constitutes discrimination (emphasis added)).[3] Accordingly, Defendants have demonstrated that they are entitled to judgment as a matter of law on the issues of medical equipment and training.

### D.       Whether the Parking Lot Was "Altered"

Plaintiffs claim that when the hospital installed a wheelchair accessible ramp in the main parking lot, this constituted an "alteration" within the meaning of the ADA that triggered a requirement to comply with additional legal obligations. Defendants deny that it has made any "alterations" to the hospital campus since July 2012.

Under the ADA, an "alteration" is "a change to a place of public accommodation or a commercial facility that affects or could affect the usability of the building or facility or any part thereof." 28 C.F.R. § 36.402. When an alteration to a building occurs, the law requires that, "to the maximum extent feasible, the altered portions of the facility [must be] readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." 42 U.S.C. § 12183. At this point, the parties have provided only minimal detail concerning the work that was done to the parking lot, but it appears that the determination as to whether an

---

[3] In addition to the architectural barrier removal requirement, the ADA also defines a failure to remove "communication barriers that are structural in nature . . . where such removal is readily achievable" as discrimination. 42 U.S.C. § 12182. The ADA Title III Technical Assistance Manual defines these types of "communications barriers" as "barriers that are an integral part of the physical structure of a facility," such as "conventional signage, which generally is inaccessible to people who have vision impairments, and audible alarm systems, which are inaccessible to people with hearing impairments." Thus, it appears that policies and training would not fall within this definition of "communication barriers."

"alteration" occurred is heavily fact-specific. Neither party has discussed whether and to what extent the modifications that were performed affect the usability of the facility. Thus, the Court cannot conclude at this time that there is no genuine dispute of material fact on this issue, nor that Defendants are entitled to judgment as a matter of law. Accordingly, Defendants' motion for summary judgment on this issue is denied.

### E.    Waiver of "Readily Achievable" Defense

Plaintiffs argue that whether or not certain barrier removal projects are "readily achievable" is an affirmative defense, and that Defendants have waived this defense by not raising it in their answer. See Hernandez v. Polanco Enterprises, Inc., 19 F. Supp. 3d 918, 931 (N.D. Cal. 2013) (courts "generally agree that defendants may waive the 'readily achievable' affirmative defense, for instance, by omitting it from their answer"); Wilson v. Haria & Gogri Corp., 479 F. Supp. 2d 1127, 1133 n.7 (E.D. Cal. 2007) ("courts are generally in agreement that whether barrier removal is readily achievable is an affirmative defense"); Colorado Cross, 264 F.3d at 1002–03 (characterizing the "readily achievable" standard as an "affirmative defense"); Fed. R. Civ. P. 8 ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . ."). Some courts, however, have reached the opposite conclusion. See Rodriguez v. Barrita, Inc., No. C 09-04057 RS, 2012 WL 3538014, at *10 (N.D. Cal. Mar. 1, 2012) (argument that "defendants waived the 'readily achievable' defense by failing to include it in their answer is unpersuasive," based in part on a critique of the reasoning in Wilson and in part on other Ninth Circuit precedent).

The Court recognizes that the case law in this area is not well-developed, and there are no cases within this circuit holding that the "readily achievable" defense was waived for failure to include it in an answer. "A district court may relax the raise-or-waive rule when equity so

dictates and there is no unfair prejudice to any opposing party." <u>Shervin v. Partners Healthcare Sys., Inc.</u>, 804 F.3d 23, 52 (1st Cir. 2015). Here, most of the case concerns proposed barrier removal projects and whether or not they are "readily achievable." This means that rigid imposition of the raise-or-waive rule would effectively decide the majority of the case. On the other hand, Plaintiffs surely anticipated that Defendants would take issue with some or all of the proposed barrier removal projects, especially due to the history of litigation between the parties, so the prejudice to Plaintiffs by not imposing the raise-or-waive rule would only be slight, at most, while the prejudice to Defendants would be significant. Further, given the lack of case law, especially First Circuit case law, on this issue, it would be inequitable to decide most of the case on a rule that has only been administered in some other circuits, and even then, not uniformly. Accordingly, the Court will relax the raise-or-waive rule here, and will hold that Defendants did not waive the "readily achievable" defense by failing to include it in their answer.

## III.    CONCLUSION

Accordingly, as discussed in this memorandum and order, Defendants' motion for summary judgment [ECF No. 24] is <u>GRANTED</u> in part and <u>DENIED</u> in part.

**SO ORDERED.**

March 28, 2017                                                      /s/ Allison D. Burroughs
                                                                   ALLISON D. BURROUGHS
                                                                   U.S. DISTRICT JUDGE